**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

DIANETTE HIGHT,

Case No. HG 09-00779
Chapter 13

Debtor.

_____/

**OPINION RE: STATE OF MICHIGAN'S AUGUST 13, 2009
OBJECTION - DEBTOR'S PROTECTIVE PROOF OF CLAIM**

Appearances:

Benjamin M. White, Esq., Grand Rapids, Michigan, attorney for Debtor
Heather M.S. Durian, Asst. Attorney General, Lansing, Michigan, attorney for the State of Michigan

Dianette Hight is a Chapter 13 debtor currently performing the terms of her confirmed plan.

The State of Michigan (the "State") has objected to Ms. Hight's filing of a proof of claim on its

behalf for her 2008 income taxes. The State's objection is overruled.

**BACKGROUND[1]**

Ms. Hight filed her petition for relief on January 28, 2009. At that time she had not

completed her state income tax return for calendar year 2008. Rather, she waited until just before

the April 15th due date to file it. The completed return indicated that she owed $4,900.00.

The State did not file a proof of claim for these taxes. Therefore, Ms. Hight filed her own

protective claim on July 19, 2009. She relied upon Section 501(c)[2] as authority for filing the claim.

---

[1]This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and W.D. Mich. LCivR 83.2 (W.D. Mich.). The matter considered is also a core proceeding. 11 U.S.C. §§ 157(b)(2)(A), (B), and (O). Therefore, the court's decision is final subject only to appeal under 28 U.S.C. § 158.

[2]11 U.S.C. § 501(c). Unless otherwise designated, all further references to "Section ____," "Bankruptcy Code," or "Code" shall be to the Bankruptcy Code as currently amended. 11 U.S.C. §§ 101, *et seq.*

If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

The State requests that the protective claim be removed from the court's register. It contends that Section 1305 alone governs and that that section permits only the State itself to file a proof of claim for Ms. Hights's 2008 tax liability. That section states in pertinent part:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor–
> **(1) for taxes that become payable to a governmental unit while the case is pending; or**
> (2) that is consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

(Emphasis added).

The court heard oral argument and then took the matter under advisement. Both parties have also filed post-hearing briefs.

## DISCUSSION

The State cites *U.S. v. Ripley (In re Ripley)*, 926 F.2d 440 (5th Cir. 1991) for its position. However, *Ripley* is not on point. What the panel in *Ripley* decided was that the IRS could file a proof of claim under Section 1305(a) over the debtors' objection because the subject taxes did not become "payable" until after their case commenced. The issue here, though, is exactly the opposite, for in this instance it is Ms. Hight, the debtor, who is attempting to file the proof of claim and it is the taxing authority who is objecting.

But the State also has brought to the court's attention the recent decision in *In re Turner*, 420 B.R. 711 (Bankr. E.D. Mich. 2009). Like Ms. Hight, the debtor in *Turner* had discovered that he owed income taxes to the State of Michigan only after he had commenced his Chapter 13 case. And,

2

like Ms. Hight, the debtor in *Turner* had filed a protective claim for those taxes over the State's objection.

The *Turner* court agreed with the State, relying in part upon *Ripley*.[3] It determined that: (1) treating a tax claim as pre- or postpetition in a Chapter 13 case was controlled by Section 1305; and (2) a tax liability "becomes payable" under that section if the applicable return is not yet due when the petition is filed. It simply followed, then, that the debtor's protective claim had to be struck because Section 1305 clearly permits only the claimant itself to file a proof of claim under that section.[4]

However, this court does not agree with *Turner* that Section 1305(a) dictates the administration of straddling tax claims in a Chapter 13 case. Granted, that section does address postpetition claims and this court concludes, as does *Turner*, that a straddling tax liability is a postpetition claim. However, Section 1305 applies in a particular case only if the plan itself so provides. 11 U.S.C. § 1322(b)(6) ("[T]he plan **may** . . . provide for the payment of all or any part of any claim allowed under section 1305 of this title.") (emphasis added). Therefore, it is Ms. Hight's plan, not Section 1305, that ultimately determines how postpetition claims are to be administered in her case.

---

[3]It also relied upon the unreported case of *Rosander v. Michigan*, No. 1:02-cv-504 (W.D. Mich. March 27, 2003).

[4]*In re Jones*, 381 B.R. 555, 558-59 (Bankr. M.D. Fla. 2007); *CenturyTel of Nw. Ark. v. Laymon (In re Laymon)*, 360 B.R. 902, 904 (Bankr. E.D. Ark. 2007), *In re Sims*, 288 B.R. 264, 268 (Bankr. M.D. Ala. 2003); *RTO Rents v. Benson (In re Benson)*, 116 B.R. 606, 608 (Bankr. S.D. Ohio 1990); *In re Pritchett*, 55 B.R. 557, 559 (Bankr. W.D. Va. 1985). *See also* 8 *Collier on Bankruptcy* ¶ 1305.02 at 1305-4 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009).

*Turner* is correct that while Section 101(5) may define what a claim is, it "does not speak to the status of the claim, that is, whether the claim is a prepetition claim, a postpetition claim, an administrative expense claim, or an unsecured, secured or priority claim." *Id.* at 715. However, the Code does limit the definition of a "creditor" to only those entities who have "a claim against the debtor **that arose at the time of or before** the order for relief concerning the debtor,"[5] and the Code also limits those who may file a proof of claim to only "creditors."[6] Therefore, if one presumes that a typical plan is to provide only for those claimants who have filed proofs of claim,[7] then it stands to reason that only those entities who have the ability to file proofs of claim – i.e., entities with prepetition claims, or "creditors" – are entitled to participate in the anticipated distribution.[8]

---

[5] 11 U.S.C. § 101(10)(A) (emphasis added). "Creditor" also includes an "entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title" and an "entity that has a community claim." 11 U.S.C. §§ 101(10)(B) and (C).

[6] 11 U.S.C. § 501(a).

[7] A plan, of course, could provide otherwise. For example, an alternative to an "allowed claims only" plan would be one whereby the Chapter 13 trustee paid a creditor whatever is set forth in the debtor's schedules as the amount owing unless the creditor files an allowed claim for a different amount. Such a plan would parallel how claims are to be administered in a Chapter 11 case. *See* FED. R. BANKR. P. 3003.

[8] *See also N.L.R.B. v. Bildisco and Bildisco*:

> The Bankruptcy Code's provisions regarding the presentation of claims are permissive. See 11 U.S.C. § 501. Nevertheless, the filing of a proof of claim is a necessary condition to the allowance of an unsecured or priority claim, since a plan of reorganization is binding upon all creditors once the plan is confirmed, whether or not the claim was presented for administration. 11 U.S.C. § 1141(d)(1)(A)(i). See *In re Francis*, 15 B.R. 998, 5 C.B.C.2d 1101 (Bkrtcy. EDNY 1981); 3 Collier on Bankruptcy ¶ 501.01 (15th ed. 1983).

465 U.S. 513, 530 n. 10, 104 S.Ct. 1188, 1198 (1984).

4

These observations certainly square with how both courts and practitioners intuitively view the Chapter 13 process.  As *Collier* noted in the context of explaining Section 1305:

> Section 1305 of the Bankruptcy Code provides that certain postpetition claims may be filed and allowed in a chapter 13 case. It creates an exception to the basic scheme of the Bankruptcy Code, which is to affect claims arising before the filing of the bankruptcy petition.  While there are other exceptions to the requirement that an allowable claim arise before the petition, postpetition claims are generally disallowable in bankruptcy cases, including chapter 13 cases.

8 *Collier on Bankruptcy* ¶ 1305.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) (citations omitted).

These observations also square with the plan that Ms. Hight confirmed in this instance.  For example, only allowed unsecured claims are to receive distributions under her plan.[9]  Ms. Hight's plan also includes the mandatory Section 1322(a)(2) provision that all claims entitled to tax priority under Section 507 are to be paid in full and, by definition, Section 507(a)(8) claims include only the claims of governmental units that are otherwise "allowed."  And Section 1326(c) itself mandates that the Chapter 13 trustee make plan distributions to creditors (i.e., claimants with prepetition claims) under Ms. Hight's plan.

Ms. Hight agrees that the State had no right to collect the 2008 income tax she calculated as owing until April 15, 2009.  She also acknowledges that she did not file her return until shortly before that date. Nonetheless, Ms. Hight maintains that the State had a "right to payment" for this amount, albeit contingent, that came into existence upon the conclusion of 2008 and, as such, the State's claim predated the commencement of her case on January 28, 2009.  In maintaining this position, Ms. Hight argues that the prevailing test of whether a claim arose pre- or postpetition is

---

[9] *See* Paragraph III.A.6., February 4, 2009 Plan.

"whether there was a prepetition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." *In re Parks*, 281 B.R. 899, 902 (Bankr. E.D. Mich. 2002).

However, Ms. Hight ignores the unique nature of the State's claim against her. Establishing when a particular type of claim becomes a "right to payment" within the meaning of Section 101(5) is not susceptible to a single rule because the circumstances giving rise to a cognizable right to payment are so varied. For example, the time when a contract or other agreement was reached works well to measure when the right to payment arose in connection with many commercial claims. Similarly, the date of the injury often suffices when intentional torts are involved. However, choosing the appropriate date becomes much more difficult when the injury occurs postpetition but the cause is traceable to a product manufactured prepetition. As a consequence, courts, as *Parks* pointed out, have devised a relationship test to further refine the process. *See, e.g., Epstein v. Off. Comm. of Unsecured Creditors, of Estate of Piper Aircraft Corp. (In re Piper Aircraft, Corp.)*, 58 F.3d 1573, 1577 (11th Cir. 1995).

But focusing upon the existence or not of a prepetition relationship between the debtor and the creditor does not fit well with obligations arising from a governmental authority's ability to assess taxes. The problem, of course, is that there is no "relationship" between the governmental unit and the targeted payee other than the minimal relationship necessary to subject the taxpayer to that authority's power. As the court in *Turner* itself observed:

6

> Taxing authorities have no contractual arrangement with debtors. A taxing authority's rights commence with the filing of a tax return.

420 B.R. at 714.[10] *See also Dukesherer Farms, Inc. v. Ball*, 405 Mich. 1, 15, 273 N.W.2d 877, 883 (1979) (Taxes are "exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts.").

---

[10]Indeed, *Turner*'s recognition that taxes cannot be ascertained until the return is actually filed clearly influenced its interpretation of Section 1305.

> If all taxes incurred by Debtor "become payable" on December 31, 2008, the tax debt was a prepetition debt and the claims bar date would apply to Treasury even though Treasury had no knowledge as to whether a claim existed until the return was filed.
>
> * * *
>
> Section 1305 of the Bankruptcy Code recognizes the unique nature of a taxing authority's claims in the context of a Chapter 13 bankruptcy. By interpreting the phrase "becomes payable" to mean the date on which a taxpayer files a tax return, the Court is merely ensuring that the taxing authority is given sufficient time, consistent with existing Bankruptcy Rules, to protect its interests.

*Id.* at 714, 716.

However, Section 502(b)(9) and Rule 3002(c)(1) already provide that a taxing authority shall have at least 60 days from the time a tax return is finally submitted to file its proof of claim and that even more time will be permitted if cause is shown. Indeed, Section 1305 would complement these provisions only in that rare instance where the taxing authority had neglected to file its proof of claim within this 60-day window and had also failed to procure an extension. But even then, Section 1305 would be of assistance only if the debtor had chosen to incorporate it as part of his plan. *Cf.* 11 U.S.C. § 1322(b)(6).

Of course, Section 1305's purpose is more than just to provide a backstop for straddling tax claims not otherwise covered by Section 502(b)(9). What it actually offers the debtor is an opportunity to include within his plan any tax claim that arises postpetition as well as eligible postpetition consumer debt. Moreover, Section 1305's reach is not limited to only claims that arise immediately following the commencement of the case. It also covers postpetition claims that may not arise until years after the plan's confirmation.

In fact, what the taxpayer earns is relevant to the tax assessed only because it is accepted as a fair way of apportioning the burden to be imposed. For example, the Michigan legislature could on April 15th just take $15,000.00 from every person residing within its borders. Or, the legislature could declare that the April 15th assessment is to be instead some multiple of the taxpayer's weight on a particular day. Or, the Michigan legislature could measure the April 15th tax based upon the amount of income earned during the previous calendar year, which is what the Michigan legislature actually did in this instance. The point is that income earned during the previous year, or, for that matter, weight recorded on a given day, is simply a way of coming up with what the State has decided it will take from its taxpayers on April 15th of every year.

The Bankruptcy Code in fact recognizes that there is a distinction between the tax itself and the means by which it is calculated. Specifically, Section 507(a)(8) provides that priority status is to be given to allowed unsecured claims:

> . . . only to the extent that such claims are for--
> (A) a tax on or **measured by** income or gross receipts for a taxable year ending on or before the date of the filing of the petition —
> (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(Emphasis added).

Section 507(a)(8), though, raises other issues. Take, for example, the instant case. As already indicated, Section 1322(a)(2) requires Ms. Hight to pay all priority claims, including all Section 507(a)(8) tax claims, in full over the term of the plan. However, the timing of Ms. Hight's case results in a postpetition claim being included among the tax priority claims that must be so paid, for there is no question that what she owed to the State on April 15, 2009 was "a tax . . . measured by

8

income . . . for a taxable year ending . . . before the date of the filing of the petition . . . ." 11 U.S.C. § 507(a)(8)(A).

The inclusion, though, of such a postpetition debt among the claims to receive distributions under the plan contradicts the underlying presumption that a debtor's Chapter 13 plan is intended only to address prepetition claims. Moreover, the fact that its inclusion in the plan is mandatory challenges the impression created by Section 1305 that postpetition tax claims may be paid for under a plan only if the governmental entity itself chooses to file a proof of claim.

However, these apparent contradictions are reconciled by Section 502(i):

> A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Therefore, to put it in the context of the instant case, the State's claim against Ms. Hight for her 2008 income taxes, which clearly arose postpetition but which is nonetheless entitled to Section 507(a)(8) priority status, is to be determined and allowed "the same as if such claim had arisen before the date of the filing of the petition." *Id. See also City of White Plains, N.Y. v. A & S Galleria Real Estate, Inc. (In re Federated Dept. Stores, Inc.)*, 270 F.3d 994, 1006 (6th Cir. 2001) ("Congress's intent in enacting § 502(i) was to give eighth priority status to claims that arise after the filing of a bankruptcy petition, but otherwise meet the criteria of § 507(a)(8).").

Moreover, the notion that a straddling income tax claim is to be treated as if it in fact arose prepetition is carried over to the claims process as well. Again, debtors generally intend Chapter 13 plans to provide for only those claimants (or, better, creditors) who file proofs of claim under Section

9

501 and "creditors" for the most part, are only those claimants with a prepetition claim. 11 U.S.C. § 101(10)(A). "For the most part," though, is the operative phrase, for subpart (B) of Section 101(10) expands the definition of creditor to also include claims against the estate "of a kind specified in section 348(d), 502(f), 502(g), 502(h) or **502(i)** of this title . . ." (emphasis added). Consequently, not only does Section 1322(a)(2), in conjunction with Section 507(a)(8) and 502(i), compel a Chapter 13 debtor to provide in his plan for straddling postpetition tax claims, but Section 501(a), in conjunction with Section 101(10)(B), also makes it clear that any taxing authority owed such a straddling debt must file a proof of claim in order for it to be paid under the plan. But if the taxing authority is required to file a proof of claim under Section 501(a) for this type of postpetition claim, then it stands to reason that the debtor too may file under Section 501(c) a protective proof of claim for that same debt if the taxing authority does not do so.

In summary, then, the State's challenge to the propriety of Ms. Hight's protective claim for her 2008 income tax liability must fail. Although the claim did not in fact become a "right to payment" (i.e., a claim) within the meaning of Section 101(5) until after Ms. Hight commenced her case, Section 1322(a)(2) required that it be paid as if it were a prepetition claim and, under Ms. Hight's plan, proofs of claim are required if such claims are to be allowed. Therefore, Ms. Hight

10

clearly had the opportunity[11] under Section 501(c) to file a protective claim when the State elected

not to file its own proof of claim.

## CONCLUSION

For the reasons stated in this opinion, the State's challenge to Ms. Hight's protective claim

filed on its behalf is denied and, therefore, that claim will remain on file. The court will prepare an

order consistent with this opinion.

3/24/10

Honorable Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this 24th day of March, 2010
at Grand Rapids, Michigan.

_____

[11]The court chooses "opportunity" to describe Ms. Hight's situation because there is the separate question of whether Ms. Hight complied with the requirements for filing a protective claim. Specifically, Rule 3004 permits a debtor to file a protective claim only within a 30-day window that first opens when the claimant's own window for filing a proof of claim closes. In this instance, the State had 180 days (*i.e.*, until July 28, 2009) from the commencement of Ms. Hight's case to file its claim. FED. R. BANKR. P. 3002(c)(1). However, Ms. Hight filed her protective claim on July 17, 2009, which was eleven days before the State's deadline expired.

The State did not raise this issue in its objection and, therefore, the court does not address it in disposing of the same. Nonetheless, the court is compelled to identify this issue since it goes beyond the prima facie validity that Section 502(a) affords filed proofs of claim to the underlying question of whether Ms. Hight had in fact the authority to file the proof of claim when she did.

11